T.C. Summary Opinion 2006-6


UNITED STATES TAX COURT



CONRAD FITZGERALD LEWIS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2430-04S.               Filed January 24, 2006.


Conrad Fitzgerald Lewis, pro se.

<u>Steven M. Webster</u>, for respondent.



GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes of $5,926.00, $7,816.65, and $5,336.00 for the taxable years 2000, 2001, and 2002, respectively.

After concessions,[1] the issues for decision are: (1) Whether petitioner is entitled to claim the dependency exemption deduction for DD for tax years 2000, 2001, and 2002; (2) whether petitioner is entitled to a child tax credit with DD as the qualifying child for tax years 2000, 2001, and 2002; (3) whether petitioner is entitled to claim Schedule C expenses for the 2000, 2001, and 2002 tax years; (4) whether petitioner is entitled to miscellaneous itemized deductions for the 2000 tax year;[2] and (5) whether petitioner failed to report interest income for tax years 2000 and 2001.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are

---

[1]Petitioner listed KM, BW, and DD (the Court uses only the minor child's initials) as dependents on his tax returns for the taxable years 2000, 2001, and 2002. In the notice of deficiency, respondent disallowed petitioner's claimed dependency exemption deductions and related child tax credits for KM, BW, and DD. However, at trial, respondent conceded that petitioner was entitled to the dependency exemption deductions and related child tax credits for KM and BW for the taxable years 2000, 2001, and 2002.

[2]Respondent also adjusted petitioner's miscellaneous itemized deductions for 2002. The amount of deductions, with respect to taxable year 2002, to which petitioner is entitled is a computational matter, which will be decided based on the Court's resolution of the issues in this case.

incorporated herein by this reference.  Petitioner resided in Hopkins, South Carolina, on the date the petition was filed in this case.

In March of 1995, petitioner and Paula B. Lewis (Ms. Lewis) were married.  Ms. Lewis had a child, KM, from a previous relationship.  Petitioner and Ms. Lewis had two children during their marriage, BL and JL.  Petitioner and Ms. Lewis also had two foster children, BW and DD, in their custody during the taxable years in issue.  DD is the only child at issue in the present case.  On June 3, 1999, the South Carolina Department of Social Services issued to petitioner and Ms. Lewis a license to conduct a foster family boarding home under the provisions of Act Number 334, Section 3, enacted March 10, 1986.  DD was placed with petitioner and Ms. Lewis by Growing Home, a branch of South Carolina Social Services, from April 9, 2000, through October 1, 2001.

Petitioner and Ms. Lewis separated in taxable year 2000.  At that time, petitioner moved out of their house.  At the time of trial, petitioner and Ms. Lewis were still trying to reconcile, but were not formally divorced.

Petitioner and Ms. Lewis purchased their house in 1999 using their combined funds.  The house was titled solely in Ms. Lewis's name.  Ms. Lewis claimed a deduction for the home mortgage

interest paid on her and petitioner's house for taxable year 2002
of $6,458.

During the years in issue, Ms. Lewis was a self-employed
cosmetologist. Also, during the years in issue, petitioner was
employed as a truck driver by Wilson Trucking Corporation.
Petitioner received wage income from Wilson Trucking Corporation
for taxable years 2000, 2001, and 2002, of $40,816, $34,904, and
$41,035, respectively. Further, during the years in issue,
petitioner operated a hair cutting and beauty salon business
known as "Your Future Style".

Sometime in 1997, Ms. Lewis started a business known as
"Kiddy Cuts and Styles". During 1998, Ms. Lewis ceased business
operations of "Kiddy Cuts and Styles". Shortly after Ms. Lewis
discontinued her existing business, in May 1998, petitioner
started his business named "Your Future Style" (the business).
Petitioner leased a commercial unit in Leesburg Plaza (commercial
space), which was located in Columbia, South Carolina.
Petitioner and Ms. Lewis's names were both on the commercial
lease contract and the phone bills for the business. The utility
bills relating to the business were in the name of and addressed
to "Paula B. Adams[3] Doing Business As Kiddy Cuts & Style".

---

[3]The Court assumes that Paula B. Adams is Ms. Lewis's maiden
name.

Petitioner renovated the commercial space before opening his salon. Petitioner's commercial space consisted of three barber chairs and six salon stations. Petitioner leased out the barber chairs and salon stations to licensed barbers and cosmetologists. The average lease rentals for the barber chairs and salon stations were $60 and $100 per week, respectively. One of the cosmetologists to whom petitioner leased a salon station was Ms. Lewis.

Ms. Lewis filed Federal income tax returns for the taxable years 2000, 2001, and 2002. Ms. Lewis attached a Schedule C, Profit or Loss From Business, to each of her Forms 1040, U.S. Individual Income Tax Return, for the taxable years 2000, 2001, and 2002. On her Schedules C for these years Ms. Lewis reported: (1) Her principal profession as a cosmetologist, (2) her business name as "Your Future Style", and (3) the commercial space as the address of "Your Future Style".

Petitioner received interest income during taxable years 2000 and 2001 from Wachovia Bank of $20 and $12, respectively. Petitioner also received interest income during taxable years 2000 and 2001 from Fort Jackson Federal Credit Union of $93 and $29, respectively. Petitioner did not report any of this interest income on his 2000 and 2001 Federal income tax returns.

On his 2000 Federal income tax return, petitioner claimed dependency exemption deductions for KM, BW, and DD and child tax

credits for KM, BW, and DD, as the qualifying children.  Also, petitioner attached to his 2000 Federal income tax return a Schedule C.  On his Schedule C, for taxable year 2000, petitioner reported $9,250 of business income from the business.  Petitioner deducted $20,387 in business expenses, which resulted in a reported business loss of $11,137.  Petitioner's Schedule C business expenses were as follows:

| | | | |
|---|---|---|---|
| Line 15 | Insurance (other than health) | | $600 |
| Line 20a | Rent or lease (Vehicles, machinery and equipment) | | $8,340 |
| Line 21 | Repairs and maintenance | | $1,850 |
| Line 22 | Supplies | | $990 |
| Line 23 | Taxes and licenses | | $415 |
| Line 25 | Utilities | | $4,200 |
| Line 27 | Other expenses | | $3,992 |
| | | Total | $20,387 |

Furthermore, petitioner attached a Schedule A, Itemized Deductions, to his 2000 Federal income tax return.  On his 2000 Schedule A, petitioner claimed as follows, in pertinent part:

| Itemized Deductions | | | Amount |
|---|---|---|---|
| Line 5 | State and local income taxes | | $2,553 |
| Line 6 | Real estate taxes | | 901 |
| Line 7 | Personal property taxes | | 792 |
| Line 9 | Total taxes | | 4,246 |
| Line 10 | Home mortgage interest and points | | 7,134 |
| Line 15 | Gifts to charity by cash or check (Church) | | 3,300 |
| Line 16 | Other than by cash or check | | 250 |
| Line 18 | Total contributions to charity | | 3,550 |
| Line 20 | Unreimbursed employee expenses | | 2,750 |
| | Uniforms and cleaning | $2,500 | |
| | Shoes | 250 | |
| Line 21 | Tax preparation fees | | 125 |
| Line 23 | Total limited misc. expenses | | 2,875 |
| Line 26 | Net limited misc. deduction | | 2,237 |
| Line 28 | Total itemized deductions | | 17,167 |

As previously stated, petitioner did not report any interest income on his 2000 Federal income tax return.

On his 2001 Federal income tax return petitioner claimed dependency exemption deductions for KM, BW, and DD and child tax credits for KM, BW, and DD, as the qualifying children. Also, petitioner attached to his 2001 Federal income tax return a Schedule C. On his Schedule C, for taxable year 2001, petitioner reported $5,000 of business income from the business and deducted $25,440 in business expenses, which resulted in a reported business loss of $20,440.[4] As previously stated, petitioner did not report any interest income on his 2001 Federal income tax return.

On his 2002 Federal income tax return petitioner claimed dependency exemption deductions for KM, BW, and DD and child tax credits for KM, BW, and DD, as the qualifying children. Also, petitioner attached to his 2002 Federal income tax return a Schedule C. On his Schedule C, for taxable year 2002, petitioner reported $1,352 of business income from the business and deducted $8,631 in business expenses, which resulted in a reported business loss of $7,279.[5] Furthermore, petitioner attached a

---

[4]The record in this case did not contain an itemized list of petitioner's Schedule C business expenses for taxable years 2001 and 2002.

[5]See _supra_ note 4.

Schedule A to his 2002 Federal income tax return. On his 2002

Schedule A, petitioner claimed as follows, in pertinent part:

| Itemized Deductions | Amount |
|---|---|
| Line 1 Medical and dental expenses | $6,419 |
| Line 4 Net medical deduction | 3,887 |
| Line 5 State and local income taxes | 2,578 |
| Line 9 Total taxes | 2,578 |
| Line 28 Total itemized deductions | 6,465 |

In the notice of deficiency, with respect to taxable year

2000, respondent denied petitioner: (1) The claimed dependency

exemption deductions; (2) the claimed child tax credits; (3)

$6,904 of his claimed $20,387 business expense deductions; and

(4) $8,961 of his claimed $17,167 Schedule A itemized deductions.

Additionally, respondent determined that petitioner had

unreported interest income of $113 for taxable year 2000.

With respect to taxable year 2001, respondent denied

petitioner: (1) The claimed dependency exemption deductions; (2)

the claimed child tax credits; and (3) the entire amount of his

claimed $25,440 Schedule C business expense deductions.

Additionally, respondent determined that petitioner had

unreported interest income of $41 for taxable year 2001.

With respect to taxable year 2002, respondent denied

petitioner: (1) The claimed dependency exemption deductions; (2)

the claimed child tax credits; (3) the entire amount of

petitioner's claimed $8,631 Schedule C business expense

deductions; and (4) $640 of petitioner's claimed $6,465 Schedule A itemized deductions.[6]

## Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct. Welch v. Helvering, 290 U.S. 111, 115 (1933). In pertinent part, Rule 142(a)(1) provides the general rule that "The burden of proof shall be upon the petitioner". In certain circumstances, however, if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper tax liability, section 7491 places the burden of proof on the Commissioner. Sec. 7491(a)(1); Rule 142(a)(2). Credible evidence is "'the quality of evidence which, after critical analysis, * * * [a] court would find sufficient * * * to base a decision on the issue if no contrary evidence were submitted'".[7] Baker v. Commissioner, 122 T.C. 143, 168 (2004) (quoting Higbee v. Commissioner, 116 T.C. 438, 442 (2001)). Section 7491(a)(1) applies only if the taxpayer complies with substantiation requirements, maintains all required records, and cooperates with the Commissioner for witnesses, information, documents, meetings, and interviews.

---

[6]See footnote 2.

[7]We interpret the quoted language as requiring the taxpayer's evidence pertaining to any factual issue to be evidence the Court would find sufficient upon which to base a decision on the issue in favor of the taxpayer. See Bernardo v. Commissioner, T.C. Memo. 2004-199.

Sec. 7491(a)(2). Although neither party alleges the applicability of section 7491(a), we conclude that the burden of proof has not shifted to respondent with respect to any of the issues in the present case.

Moreover, deductions are a matter of legislative grace and are allowed only as specifically provided by statute. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

1.  Deduction for Dependency Exemption

At issue are the dependency exemption deductions claimed by petitioner for DD.

Section 151 allows deductions for exemptions for dependents of the taxpayer. See sec. 151(c). Section 152(a) defines the term "dependent" to mean a child of the taxpayer over half of whose support for the year was received from the taxpayer. Section 152(b)(2) provides that a foster child shall be treated as a child of the taxpayer, if such child satisfies the requirements of section 152(a)(9). That section requires that the child be:

> (9) An individual (other than an individual who at any time during the taxable year was the spouse, determined without regard to section 7703, of the taxpayer) who, for the taxable year of the taxpayer, has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household.

"[S]upport" includes "food, shelter, clothing, medical and dental care, education, and the like." Sec. 1.152-1(a)(2)(i),

Income Tax Regs. In determining whether an individual received more than one-half of his or her support from the taxpayer, there shall be taken into account the amount of support received from the taxpayer as compared to the entire amount of support which the individual received from all sources. Id. In other words, the support test requires the taxpayer to establish the total support costs for the claimed individual and that the taxpayer provided at least half of that amount. A taxpayer who cannot establish the total amount of support costs for the claimed individual generally may not claim that individual as a dependent. Blanco v. Commissioner, 56 T.C. 512, 514-515 (1971); Cotton v. Commissioner, T.C. Memo. 2000-333.

DD was placed in petitioner and Ms. Lewis's home as a foster child by the Department of Social Services of South Carolina on April 9, 2000, and DD stayed in their home until October 1, 2001. Petitioner and Ms. Lewis received approximately $900 per month from Social Services toward the support of DD. Petitioner and Ms. Lewis separated in 2000, and thereafter petitioner moved out of the house.

Petitioner admitted that after he moved out of the house still occupied by Ms. Lewis, his new residence did not constitute the principal place of abode for DD for taxable years 2000, 2001, and 2002. Additionally, petitioner did not testify that he provided over half of DD's support for the taxable years 2000,

2001, and 2002. In fact, petitioner testified that the Department of Social Services provided funding that completely paid for all of DD's support for the taxable years at issue in the present case.

Upon the basis of the record before us, we find that petitioner has not established that his home during taxable year 2000, 2001, and 2002 was the principal place of abode of DD. Further, we find that petitioner has failed to establish the total support costs for the claimed individual, DD, and that he provided at least half of that amount. Respondent's determination on this issue is sustained.

2. Child Tax Credit

As previously stated, petitioner claimed a child tax credit for taxable years 2000, 2001, and 2002 with DD as the qualifying child. In the notice of deficiency, respondent disallowed the child tax credit.

Section 24(a) authorizes a child tax credit with respect to each "qualifying child" of the taxpayer. The term "qualifying child" is defined in section 24(c). As relevant here, a "qualifying child" means an individual with respect to whom the taxpayer is allowed a deduction under section 151. Sec. 24(c)(1)(A).

We have already held that petitioner is not entitled to a dependency exemption deduction under section 151 for DD.

Accordingly, DD is not considered a "qualifying child" within the meaning of section 24(c).  It follows, therefore, that petitioner is not entitled to a child tax credit under section 24(a) with respect to DD.

3.  Schedule C Expenses

A taxpayer generally may not deduct personal, living, and family expenses.  Sec. 262(a).  However, section 162(a) allows a taxpayer to deduct all ordinary and necessary business expenses paid or incurred during the taxable year in carrying on any trade or business.  To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business.  Welch v. Helvering, 290 U.S. at 113-114.  To be "ordinary" the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved.  Deputy v. Du Pont, 308 U.S. 488, 495 (1940).

Section 6001 and the regulations promulgated thereunder require taxpayers to maintain records sufficient to permit verification of income and expenses.  As a general rule, if the trial record provides sufficient evidence that the taxpayer has incurred a deductible expense, but the taxpayer is unable to adequately substantiate the precise amount of the deduction to which he or she is otherwise entitled, the Court may estimate the amount of the deductible expense, bearing heavily against the taxpayer whose inexactitude in substantiating the amount of the

expense is of his own making, and allow the deduction to that extent. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). However, in order for the Court to estimate the amount of an expense, the Court must have some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957). With these well-established propositions in mind, we must determine whether petitioner has satisfied his burden of proving that he is entitled to the claimed Schedule C expenses.

At trial, petitioner testified that most of his records substantiating his claimed Schedule C business expenses were destroyed due to a fire in his house. However, petitioner offered into evidence documents which were not destroyed by the alleged fire. These documents consisted of: (1) BellSouth phone bills which were in the name of and addressed to "Paula & Conrad Lewis Doing Business As Kiddy Cut & Style", (2) utility bills from SCE&G in the name of and addressed to "Paula B. Adams[8] Doing Business As Kiddy Cuts & Style", and (3) a letter from R.E. Hendrix - Apartment Rentals, stating: "This is to confirm the fact that Paula & Conrad Lewis rented from us unit N at Leesburg

[8]See footnote 3.

Plaza satisfactorily from May 1998 to July 2002. The rent was $695.00 per month."

The expenses evidenced by the above-mentioned phone bills and utility bills appear, from the text of the bills, to be incurred not for the business, "Your Future Style", but for "Kiddy Cuts and Styles". The record is not entirely clear as to the transition of business operations from "Kiddy Cuts and Styles" to "Your Future Style". However, we surmise the following facts. It appears that out of convenience and for "bad credit" reasons, petitioner transferred the utility and phone accounts from "Kiddy Cuts and Styles" to his business. In doing so, he did not change the name of the business on the utility and phone account official records. Petitioner's testimony and Ms. Lewis's Forms 1040 establish that "Kiddy Cuts and Styles" ceased business operations in 1998 and that the charges shown on the above-mentioned phone bills and utility bills were, in fact, incurred in the operation of the business, "Your Future Style".

At first glance, the business relationship between Ms. Lewis and petitioner outwardly resembles a joint venture or a partnership. Whether a valid partnership exists for Federal income tax purposes is governed by Federal law. See Commissioner v. Culbertson, 337 U.S. 733 (1949).

As pertinent here, a partnership for Federal income tax purposes is defined in section 761(a) as "a * * * joint venture

or other unincorporated organization through or by means of which any business, * * * or venture is carried on, and which is not, within the meaning of this * * * [subtitle], a corporation or a trust or estate."  See also sec. 7701(a)(2).

A partnership is created "when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses."  Commissioner v. Tower, 327 U.S. 280, 286 (1946).

Whether parties have formed a partnership is a question of fact, and while all circumstances are to be considered, the essential question is whether the parties intended to, and did in fact, join together for the present conduct of an undertaking or enterprise.  Luna v. Commissioner, 42 T.C. 1067, 1077 (1964).

Petitioner stated that Ms. Lewis's name was on the commercial lease contract, the phone bills, and the utility bills because he had "bad credit" and needed her creditworthiness to enter into the lease and obtain phone and utility services. Petitioner further testified that profits and expenses stemming from the business were not split between himself and Ms. Lewis. Ms. Lewis's Federal income tax returns for taxable years 2000, 2001, and 2002, confirm that she did not report any of the income generated by the business.  Her Federal income tax returns for the taxable years 2000, 2001, and 2002, report that her income

was derived from her occupation as a cosmetologist/independent contractor.  We therefore conclude that petitioner was the sole proprietor of the business, "Your Future Style".  Thus, he is entitled to deduct all substantiated Schedule C expenses that were incurred in the operation of the business.

A.  Taxable Year 2000

As previously stated, on his Schedule C for taxable year 2000 petitioner reported $9,250 of business income from the business.  Additionally, petitioner deducted $20,387 in business expenses, which resulted in a reported business loss of $11,137.

Respondent, in the notice of deficiency, disallowed $6,904 of petitioner's claimed $20,387 business expense deductions for taxable year 2000.

On the basis of the record in this case, for the taxable year 2000 petitioner has substantiated, through the phone bills, the utility bills, and his landlord's letter, business expenses in the following amounts:

| 1. | Rent | $8,340.00 |
|----|------|-----------|
| 2. | BellSouth phone expenses | $1,129.70 |
| 3. | SCE&G utility expenses | $1,728.21 |
|    | Total | $11,197.91 |

Petitioner has substantiated Schedule C business expenses for taxable year 2000 of $11,198.  As previously stated, respondent, in the notice of deficiency, allowed petitioner $13,483 in Schedule C business expenses.  Thus, respondent has allowed a larger amount than petitioner was able to substantiate at trial.

Therefore, we sustain respondent's determination as to the taxable year 2000.

B.  <u>Taxable Year 2001</u>

As previously stated, on his Schedule C for taxable year 2001 petitioner reported $5,000 of business income from the business.  Additionally, petitioner deducted $25,440 in business expenses, which resulted in a reported business loss of $20,440.  Respondent, in the notice of deficiency, disallowed the entire amount of petitioner's claimed $25,440 Schedule C business expense deductions for taxable year 2001.

On the basis of the record in this case, for the taxable year 2001 petitioner has substantiated through the aforementioned documents business expenses in the following amounts:

| 1. | Rent | $8,340.00 |
| 2. | BellSouth phone expenses | $1,483.96 |
| 3. | SSE&G utility expenses | $1,044.81 |
| | Total | $10,868.77 |

Petitioner has substantiated Schedule C business expenses for taxable year 2001 of $10,869.  We conclude that petitioner is entitled to deduct Schedule C business expenses for taxable year 2001 of $10,869.

C.  <u>Taxable Year 2002</u>

As previously stated, on his Schedule C for taxable year 2002 petitioner reported $1,352 of business income from the business.  Additionally, petitioner deducted $8,631 in business expenses, which resulted in a reported business loss of $7,279.

Respondent, in the notice of deficiency, disallowed the entire amount of petitioner's claimed $8,631 Schedule C business expense deductions for taxable year 2002.

On the basis of the record in this case, for the taxable year 2002 petitioner substantiated through the aforementioned documents the following amounts of business expenses:

| | | |
|---|---|---|
| 1. | Rent | $4,865.00 |
| 2. | BellSouth phone expenses | $649.86 |
| 3. | SCE&G utility expenses | $502.82 |
| | Total | $6,017.68 |

Petitioner has substantiated Schedule C business expenses for taxable year 2002 of $6,018. We conclude that petitioner is entitled to deduct Schedule C business expenses for taxable year 2002 of $6,018.

## 4. Miscellaneous Itemized Deductions

Petitioner attached a Schedule A to his 2000 Federal income tax return.

In the notice of deficiency, respondent disallowed $8,961 of petitioner's claimed $17,167 Schedule A itemized deductions for taxable year 2000. The amount of $8,961 disallowed by respondent consists of: (1) Disallowed home mortgage interest expense of $7,134; (2) disallowed "total contributions to charity" of $250; and (3) disallowed "net limited miscellaneous itemized deductions" of $1,577.

A.  Home Mortgage Interest

As stated above, respondent disallowed petitioner's claimed deduction of $7,134 for home mortgage interest paid during taxable year 2000.  Respondent contends that petitioner is not entitled to any of the claimed deduction because the house was purchased and encumbered by a mortgage in Ms. Lewis's name and titled in Ms. Lewis's name.  Petitioner testified that the house was in Ms. Lewis's name because of his bad credit history.

As pertinent here, section 163(a) and (h)(1) allows an individual a deduction for all interest paid within the taxable year on indebtedness, except for personal interest.  Qualified residence interest is excluded from the definition of personal interest and thus is deductible under section 163(a).  See sec. 163(h)(2)(D).  Qualified residence interest is any interest which is paid or accrued during the taxable year on acquisition indebtedness or home equity indebtedness.  See sec. 163(h)(3)(A).  Acquisition indebtedness is any indebtedness secured by the qualified residence of the taxpayer or incurred in acquiring, constructing, or substantially improving the qualified residence.  See sec. 163(h)(3)(B).  The indebtedness generally must be an obligation of the taxpayer and not an obligation of another.  See Golder v. Commissioner, 604 F.2d 34, 35 (9th Cir. 1979), affg. T.C. Memo. 1976-150.

As previously stated, at trial, petitioner testified that the qualified residence was in Ms. Lewis's name because of his bad credit history.  Petitioner presented no documentary evidence such as the mortgage itself or canceled checks to prove that the mortgage was his obligation or that he paid the mortgage interest during taxable year 2000.  Further, Ms. Lewis claimed a deduction for the home mortgage interest paid on the subject property for taxable year 2002 in the amount of $6,548.  Since petitioner has failed to provide any proof that the mortgage was his obligation or that he made mortgage interest payments, we sustain respondent's disallowance of petitioner's claimed deduction of home mortgage interest.

B.  Gifts to Charity

On petitioner's Schedule A filed with his Federal income tax return for taxable year 2000, he reported the following gifts to charity:

| Itemized Deductions | Amount |
| --- | --- |
| Gifts by cash or check | $3,300 |
| Gifts other than by cash or check | 250 |
| Total gifts | $3,550 |

Respondent determined that petitioner did not adequately substantiate that "gifts other than by cash or check" were made. Respondent further determined that, if such gifts were made, petitioner did not adequately substantiate the fair market value of the gifts.  Accordingly, respondent allowed a deduction for

charitable contributions for taxable year 2000 in the amount of $3,300.

Deductions for charitable contributions are allowable only if verified under regulations prescribed by the Secretary. Sec. 170(a). Section 1.170A-13, Income Tax Regs., in turn, sets forth the types of substantiation necessary to support deductions for charitable contributions.

For charitable contributions of property other than money, taxpayers generally must maintain for each contribution a receipt from the donee showing the following information: (1) The name of the donee; (2) the date and location of the contribution; and (3) a description of the property in detail reasonably sufficient under the circumstances. Sec. 1.170A-13(b)(1), Income Tax Regs. The amount of the contribution is the fair market value of the property at the time of the contribution. Sec. 1.170A-1(c)(1), Income Tax Regs.

Petitioner provided no documentation that would substantiate that his claimed "gifts other than by cash or check" were made or the fair market value of such alleged gifts. Furthermore, petitioner did not give any testimony as to any specific charitable gifts. On the basis of the record in this case, we conclude that petitioner has not substantiated any charitable gifts for taxable year 2000 other then those already allowed by

respondent.  Accordingly, respondent's determination on this issue is sustained.

    C.  <u>Unreimbursed Employee Expenses</u>

On petitioner's Schedule A filed with his Federal income tax return for taxable year 2000, petitioner deducted unreimbursed employee expenses of $2,750 and tax preparation fees of $125. Respondent determined that petitioner did not adequately substantiate unreimbursed employee expenses above the amount of $1,313.  Accordingly, respondent allowed a deduction for "job expenses and most other miscellaneous deductions" for taxable year 2000 of $1,438.[9]

As previously stated, section 162(a) allows a deduction for ordinary and necessary business expenses paid or incurred during the taxable year in carrying on any trade or business.  For an expense to be "ordinary" the transaction that gives rise to the expense must be of a common or frequent occurrence in the type of business involved.  <u>Deputy v. du Pont</u>, 308 U.S. at 495.  To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business.  <u>Welch v. Helvering</u>, 290 U.S. at 113-114.

The performance of services as an employee constitutes a trade or business.  See sec. 1.162-17(a), Income Tax Regs.  The employee must show the relationship between the expenditures and

---

[9]Respondent calculated this amount by adding the substantiated claimed unreimbursed employee expenses of $1,313 to the tax preparation fees allowed of $125.

the employment. See <u>Evans v. Commissioner</u>, T.C. Memo. 1974-267, affd. 557 F.2d 1095 (5th Cir. 1977). The taxpayer bears the burden of substantiation. <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Petitioner testified that the unreimbursed employee expenses were paid in furtherance of his occupation as a truck driver. Once again, petitioner provided no documentation that would substantiate that he paid the claimed expenses or that the alleged expenses were related to his employment as a truck driver.

On the basis of the record in this case, we conclude that petitioner has not substantiated any unreimbursed employee expenses for taxable year 2000 in excess of the amount allowed by respondent. Accordingly, respondent's determination on this issue is sustained.

5. <u>Interest Income</u>

Petitioner timely filed his Federal income tax returns for taxable years 2000 and 2001 without reporting any interest income. Respondent, in the notice of deficiency, determined that petitioner received interest income of $113 and $41 for taxable years 2000 and 2001, respectively.

The law is clear. Gross income includes all income from whatever source derived. Sec. 61(a). Section 61(a)(4) specifically includes income derived from interest.

Respondent has established that petitioner received interest income from: (1) Wachovia Bank of $20 and $12 for taxable years 2000 and 2001, respectively; and (2) Fort Jackson Federal Credit Union of $93 and $29 for taxable years 2000 and 2001, respectively.

Petitioner has failed to provide any documentation that would contradict respondent's determination. Furthermore, petitioner has not specifically testified to not receiving the above-mentioned interest income.

On the basis of the record in this case, we conclude that petitioner has received interest income of $113 and $41 for taxable years 2000 and 2001, respectively. Accordingly, respondent's determination on this issue is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

under Rule 155.